**UNITED STATES of America, Appellee,**

v.

**John T. CRUTCHFIELD, Jr., Appellant.**

**No. 89–3032.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1989.

Decided Jan. 26, 1990.

Thomas Lumbard (appointed by this Court), for appellant.

Patricia Stewart, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Colleen M. Kennedy, Asst. U.S. Attys., were on the brief for appellee.

Before WALD, Chief Judge, and EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Appellant, John T. Crutchfield, Jr., was committed to Saint Elizabeths Hospital on October 6, 1981, pursuant to D.C.Code § 24–301, after being found not guilty by reason of insanity of robbing a federally-insured bank. Here, Crutchfield petitions for review of an order of the district court denying his application for release from Saint Elizabeths. We affirm the district court's order.

## I. BACKGROUND

Prior to 1984, individuals found not guilty by reason of insanity of federal crimes were released from federal custody and remained free unless committed by the relevant state through its generally applicable civil commitment procedures. By contrast, individuals like Crutchfield found not guilty by reason of insanity of crimes in the District of Columbia were automatically committed to Saint Elizabeths for psychiatric treatment pursuant to D.C.Code § 24–301(d).[1] In October of 1984, however, Congress passed the Insanity Defense Reform Act ("IDRA"), 18 U.S.C. § 4241 *et seq.*, which, like the D.C.Code, mandates automatic commitment when insanity is successfully pled as a defense to a federal crime tried anywhere in the United States. The IDRA's release provisions, however, differ from those of the D.C.Code.

Sections 24–301(e) and (k)(3) of the D.C. Code place the burden on an applicant for release to show by a preponderance of the evidence that he is no longer a danger to himself or others as a result of mental illness.[2] Section 4243(f) of the IDRA

---

1. D.C.Code § 24–301(d)(1) provides:

   If any person tried upon an indictment or information for an offense raises the defense of insanity and is acquitted solely on the ground that he was insane at the time of its commission, he shall be committed to a hospital for the mentally ill until such time as he is eligible for release pursuant to this subsection or subsection (e) of this section.

2. Specifically, § 24–301(e) provides in relevant part that when the superintendent of the hospital certifies: (1) that [a committed person] has recovered his sanity; (2) that, in the opinion of the superintendent, such person will not in the reasonable future be dangerous to himself or others ..., [that] shall be sufficient to authorize the court to order the unconditional release of the person so confined.

places the burden on the applicant to show by clear and convincing evidence that he is no longer dangerous either to others or to property.[3]

On December 2, 1988, Crutchfield filed a petition for unconditional release from Saint Elizabeths. Saint Elizabeths opposed the release. During the course of the proceedings, the issue arose as to whether Crutchfield's petition should be reviewed under D.C.Code § 24–301 or under § 4243 of the IDRA. Finding that Crutchfield had not met the requisite burden of proof for release under either statute, the trial court dismissed Crutchfield's petition.

## II. ANALYSIS

Crutchfield essentially contends that except where application of the IDRA would violate the Constitution's prohibition of federal *ex post facto* laws,[4] IDRA's release provisions preempt the D.C.Code for persons federally committed under the D.C. Code but seeking release subsequent to IDRA's enactment. Thus he argues that the trial judge erred twice in his case.

First, since the D.C.Code only requires applicants to make their case for release by a preponderance of the evidence, Crutchfield maintains that the judge subjected him to an *ex post facto* law by denying his petition in part because he failed to satisfy the IDRA's more stringent "clear and convincing" standard. Crutchfield further maintains that since IDRA's release provision requires a court only to address the potential danger of a petitioner to others or to property, it was improper for the judge to deny his petition in part because he failed to satisfy the D.C.Code's requirement that applicants for release prove they are not dangerous to themselves.

We need not address Crutchfield's *ex post facto* argument because the judge applied the D.C.Code in the alternative and both the statutory language and the legislative history of the IDRA indicate that Congress did not intend it to apply to federal defendants previously committed under D.C.Code § 24–301 after acquittal by reason of insanity of federal charges.[5] We reject Crutchfield's second argument on the same grounds: it was proper for the judge to deny Crutchfield's application because he had not proven, pursuant to the D.C.Code, that he would not be dangerous to himself if released.

### A. *The IDRA and Its Legislative History*

The text of the IDRA indicates that Congress intended its release provisions to apply only to persons committed under it. Thus, as already noted, the IDRA establishes procedures for the release of an acquitted person hospitalized *"pursuant to subsection (e)."* 18 U.S.C. § 4243(f) (emphasis added). Indeed, the Act consistently limits its applicability to those hospitalized "pursuant to" its provisions. *See, e.g.*, 18 U.S.C. § 4247(e) (periodic reports must be filed for persons hospitalized under §§ 4241, 4243, 4244, 4245 or 4246); 18 U.S.C. § 4243(h) (governing release of persons hospitalized under § 4243(e) into the community).

The legislative history of the IDRA also indicates that Congress intended application only to prospective insanity acquittees. First, the Senate Report makes clear that Congress had the D.C.Code in mind when it passed the IDRA. Indeed, Congress expressly recognized that it was creating "for the first time in the Federal System *outside the District of Columbia* ... a proce-

---

Section 24–301(k)(3) provides that
> [T]he court [must] find[ ] by a preponderance of the evidence that the person is entitled to his release from custody.

**3.** Section 4243(f) provides in relevant part:
> DISCHARGE—When the director of the facility in which an acquitted person is hospitalized pursuant to subsection (e) determines that the person has recovered from his mental disease or defect to such an extent that his release ... would no longer create a substan-

tial risk of bodily injury to another person or serious damage to property of another ..., the court shall order the discharge of the acquitted person.

**4.** U.S. Const., Art. I, § 9.

**5.** Thus, we need not reach Crutchfield's argument that the IDRA's "clear and convincing" requirement is, standing alone, unconstitutional.

dure for committing a defendant who is not found guilty only by reason of insanity." S.REP. No. 22, 98th Cong., 2nd Sess., 224 (1983) (emphasis added). Thus, if Congress had intended the release provisions of the IDRA to apply to those patients already committed under D.C. law, it seems clear that it would have included specific language making 18 U.S.C. § 4243(f) applicable to § 24–301 committees.

The Senate Report also makes clear that Congress felt it could justify the IDRA's requirement that applicants for release prove their case by clear and convincing evidence only because the IDRA mandates a higher degree of proof of insanity at the trial itself:

> Moreover, the Court in *Jones* noted that the defendant could be required to prove his insanity at the trial by a higher standard than a mere preponderance of the evidence. For example, he could be required to prove his insanity by clear and convincing evidence, which in turn would justify requiring him ... to prove his present sanity or lack of dangerousness by such a higher standard. Since this bill requires the defendant to prove his insanity as a defense to the criminal charge by clear and convincing evidence, it is clearly constitutional to require those defendants acquitted of violent crimes to prove that they are no longer dangerous or insane by a similar standard.

S.REP.No. 225, 98th Cong., 1st Sess., 243 (1983). Since Congress has grounded the legitimacy of imposing a higher burden of proof on applicants for release in the fact that such persons must originally prove their insanity by the same standard, it follows that Congress would not have intended application of the new discharge stan-

dards to those persons who proved their insanity by only a preponderance of the evidence under D.C.Code § 24–301. Moreover, Congress clearly had the D.C.Code in mind when it wrote this particular section of the commentary; a footnote to the very next paragraph of commentary in the Senate Report compares the release provisions of the IDRA and the D.C.Code.[6]

In sum, both the language and legislative history of the IDRA strongly indicate that it was meant to apply only prospectively to those committed after its enactment. Nothing in it provides a reasonable basis for inferring that it should apply to earlier insanity acquittees. Without specific language in that regard, the general presumption of prospective application governs. *See generally,* Sutherland *Statutory Construction,* §§ 41.02, 41.04 (Sands 4th ed.) 1986 (a statute "will not be construed as retroactive unless the act clearly, by express language or by necessary implication, indicates that the legislature intended a retrospective application.").[7]

### B. *Crutchfield's Arguments*

Notwithstanding this evidence of congressional intent, Crutchfield contends that the Constitution compels application of the IDRA's substantive release test to him and makes two arguments to that effect. We will address each in turn.

■ While some of the intricacies of Crutchfield's first argument escape us, he appears to contend that the Constitution does not empower the federal district court in D.C. to consider detaining a person because his mental illness renders him dangerous to himself. Rather, the Constitution "leaves such *parens patriae* functions

---

**6.** The footnote provides that "This test [—whether release would create a substantial risk of bodily injury to another person or to the property of another—] is similar to that in D.C.Code 301(e) ('will not in the future be dangerous to himself or to others.' ").

**7.** Of course, if only one statute were in issue and that statute had been amended subsequent to its initial application to a person, its continuing application would be governed by the amended version of the statute so long as such

application did not constitute an *ex post facto* law. *See, e.g., United States v. Charters,* 829 F.2d 479, 485 (4th Cir.1987) (While detention of mentally ill person was legitimate under earlier version of statute, "[t]he district court was apparently unaware that, under the revised statutes, procedures once adequate are no longer sufficient."), *rev'd on other grounds, en banc, United States v. Charters,* 863 F.2d 302 (1988). Here, however, the D.C.Code remains unamended.

solely to the states and to the District of Columbia." Brief for Appellant, "Questions Presented." More specifically, he argues that the passage of the IDRA made application of the D.C.Code's "self-harm" provision by the district court unconstitutional because "the existence of the [IDRA] ousts the district court of power to use that non-federal standard." Brief for Appellant at 30.[8]

We fail to see how the Constitution precludes Congress from mandating that the D.C. district court apply the D.C.Code's insanity discharge provisions to those federally committed under the D.C.Code while simultaneously mandating IDRA application in all other cases. Federal courts commonly apply local law. So long as equal protection rights are not violated, the Constitution explicitly authorizes the Congress to make such a distinction. Article I, § 8, cl. 17 grants the federal government the authority "[t]o exercise exclusive Legislation in all Cases whatsoever, over such District ... as may ... become the Seat of the Government of the United States."

█ Crutchfield does make an equal protection argument, however, but we do not find it persuasive. First, prior to the IDRA's passage we held in *United States v. Cohen*, 733 F.2d 128 (D.C.Cir.1984), that application of the D.C.Code's commitment provisions to federal defendants in D.C. in the absence of a generally applicable federal provision did not constitute an equal protection violation. The fact that Congress has since enacted the IDRA, the discharge provisions of which are slightly different than those of the D.C.Code, works no significant change in terms of equal protection analysis. As we explained in great detail in *Cohen*, 733 F.2d at 132–36, equal protection challenges to the D.C. Code's commitment provisions are reviewed according to the rational basis test, under which "a statutory discrimination will not be set aside if any state of facts reasonably

may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). The fact that Congress has explicit constitutional authority to legislate for the District is in and of itself enough to satisfy the rational basis test. But even absent that constitutional grant, Congress' decision to apply the same statute for commitment as well as discharge purposes—D.C.Code § 24–301—is not only reasonable, but given the IDRA's higher burden of proof, also *may* be constitutionally required.[9]

### III. CONCLUSION

Congress intended the D.C.Code to govern petitions for release made by persons acquitted by reason of insanity of federal offenses under D.C.Code § 24–301 prior to the IDRA's passage but seeking release subsequent to its passage. We therefore affirm the order of the district court.

*So Ordered.*

---

8. "The district court was ... using power it no longer had, and powers which Congress could not give to a federal court, when it ruled that appellant should not be released because he 'is a danger to himself.'" *Id.*

9. Since, as noted above we need not reach Crutchfield's *ex post facto* argument, we emphasize the "may" in the sentence accompanying this footnote.